## RING CONSTRUCTION CORPORATION
### v.
### UNITED STATES.
### No. 90–55.

United States Court of Claims.
June 4, 1958.

Paul W. Steer, Cincinnati, Ohio, for plaintiff. Steer, Strauss & Adair, Cincinnati, Ohio, were on the brief.

Martin E. Rendelman, Chevy Chase, Md., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff sues for the extra costs which it incurred because, it says, it was required to use different and more expensive material than that called for by its contract with the Government, and was required to perform work and furnish material in addition to that called for in the contract.

By the contract in question which was dated March 23, 1948, the plaintiff agreed to build a hospital for the Veterans Administration at Albany, New York, for a lump sum which, by later amendment, was fixed at $10,086,007.84. Detailed specifications were included in the written contract. The plaintiff interpreted the contract as permitting it to use gypsum tile instead of the more expensive hollow clay tiling in the construction of "furring" at exterior walls and around steel columns.

The pertinent provisions of the specifications are reprinted in our finding 4.

Section 5–03(e) provided that gypsum tile could be used, at the contractor's option, for interior nonbearing partitions. Section 5–06(c) bore the heading *Structural Clay Tile or Concrete Masonry Units*. (1) *Partitions*. It then provided how partitions were to be built. In paragraph (3) *Furring* it provided how furring was to be built.

The plaintiff's claim in this regard is that "furring," as that word was used in the contract, was a type of interior partition and therefore subject to the option in Section 5–03(e) for the use of gypsum tile.

The "furring" contemplated by the contract was a nonbearing wall located at a specified distance, perhaps two feet, from an exterior wall, and anchored to that wall by metal ties not over two feet apart on center. In the space behind the furring wall, pipes were concealed. The air space behind the wall would also act as an insulator of the room from outside temperature and from dampness in the wall. The furring around columns was also set a few inches out from the columns and there could be pipes in the intervening space.

As we have said, the plaintiff urges that these furring walls were partitions. Ordinarily, partitions separate one considerable space from another, as in the case of partitions between rooms. We see no reason why the small volume of the space on one side of a wall should remove that wall out of the definition of a partition. These furring walls carried no load, the furring wall at the exterior wall of the building just made another side of the same room, two or three other admittedly partition walls of which constituted the enclosures of a room. We can think of no reason why one of the walls should be of different materials from the others.

The Government says that the heading of Section 5–06(c), in which furring is mentioned is *Structural Clay Tile or Concrete Masonry Units*. So it is, but the first paragraph in it relates to partitions and the earlier section expressly provides that gypsum block may be used in interior nonbearing partitions. The heading is therefore inaccurate. The specifications are ambigous; they were written by the Government; the plaintiff's interpretation of them is reasonable and should prevail. The plaintiff is entitled to $38,654.21 on this item of its claim.

The second item of the plaintiff's claim depends upon the application of another sentence in Section 5–06(c) of the specifications. It says:

"Partitions around elevators, stair and pipe shafts, shall be continuous from floor to the underside of the floor construction above. * * * partitions in spaces other than the above may be stopped approximately 4 inches above the ceiling level unless indicated to be otherwise."

The floor above was concrete, and the ceiling of the room below was suspended from hangers anchored in the concrete, so that there was a space of perhaps 16 or 18 inches between the ceiling and the floor above. The plaintiff was required to carry the furring around the columns to the floor-slab above, rather than to stop it four inches above the suspended ceiling level. The plaintiff says that the specific provision quoted above about partitions around elevator shafts, etc., and the provision about "spaces other than the above" show that the plaintiff was required to do more than the contract called for.

■■ Our conclusion that the furring around the columns fell within the definition of "partitions" would seem to justify the plaintiff's interpretation. The Government introduced evidence that it was common knowledge in the construction industry that steel columns should be covered throughout their entire length to prevent them from buckling under direct exposure to flames in case of fire. The plaintiff says that that fact of common knowledge is irrelevant, that the specifications do not require what the Government insisted on, and that it must be paid for as an extra. With some hesitation,

we conclude that the plaintiff was required to carry the furring to the floor above, in spite of the omission in the specifications. A bidder should call attention to an obvious omission in a specification, and make certain that the omission was deliberate, if he intends to take advantage of it. On this claim the plaintiff can recover only the difference between the cost of gypsum blocks and clay tile, $3,131.59, for the extension of the furring to the floor slab above.

■ The third item of the plaintiff's claim is for the "pointing" of the masonry walls in the elevator and dumbwaiter shafts. The specifications did not require that these walls be carefully pointed, since they were not to be exposed. The defendant's inspectors orally required that the walls be pointed, and this was done. A written direction was given to the plaintiff which purported only to require it "to fill all voids in masonry joints and holes in masonry partitions" in the elevator and dumbwaiter shafts. There were some holes in the walls of these shafts where scaffolding had been removed, and the plaintiff does not claim any amount for filling those holes. Otherwise the masonry work in them had been done in accord with the specifications, and the plaintiff is entitled to recover the cost of the pointing, plus a profit of 10 percent on that cost, a total on this claim of $3,654.19.

The plaintiff may have a judgment for $45,439.99.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.